02-11-516-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00516-CV

 

 


 
 
 In the Interest of C.D.S., Jr., A Child
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
two points, appellant C.D.S., Sr. (Father) appeals the trial court’s order terminating
his parental rights to his son, C.D.S., Jr. (Clay).[2] 
Father contends that the evidence is legally and factually insufficient to
prove that termination of his parental rights is in Clay’s best interest.  We
affirm.

Background
Facts

          M.B.
(Mother) tested positive for methamphetamine several times during her pregnancy
with Clay, including within a month of his birth.  She gave birth to Clay in
January 2011.  Upon his birth, his meconium[3] tested positive for methamphetamine. 
Based on Mother’s drug use, Child Protective Services (CPS) removed Clay from her
care while he was still at the hospital.

           CPS
assigned Gladys Demus to be the caseworker on Clay’s case.  During Demus’s
investigation into the parents’ backgrounds, she learned that Father had a
history of involvement with CPS but not as a parent; a child who had been
around Father had accused him of sexually abusing her.  The record does not
reflect whether Mother and Father ever lived together or were married;
regardless, Clay never lived with either of his parents.

          The
Department of Family and Protective Services (the Department) filed a petition
seeking termination of the parents’ parental rights to Clay if reunification
could not be achieved.  The trial court assigned the Department as Clay’s
temporary sole managing conservator and appointed counsel to represent each
parent.

          Soon
after the removal, Demus spoke with the parents about working on a service
plan, but “neither one of them wanted to do anything.”  Father never
participated in any services because he went to prison in March 2011 for
forgery and stayed there throughout the rest of Clay’s case.

          At
the end of the termination trial in December 2011, the trial court terminated
Father’s parental rights to Clay on the grounds that termination is in Clay’s
best interest, that Father had engaged in conduct or had knowingly placed Clay
with persons who had engaged in conduct that had endangered Clay’s physical or
emotional well-being, and that Father had knowingly engaged in criminal conduct
that had resulted in his conviction of an offense, imprisonment, and an inability
care for Clay for not less than two years from the date that the Department
filed its termination petition.[4]  The court named the
Department as Clay’s permanent managing conservator.  Appellant brought this appeal.

Clay’s
Best Interest

          In
his two points, appellant contends that the evidence is legally and factually
insufficient to sustain the trial court’s finding that termination of his
parental rights to Clay is in Clay’s best interest.[5] 
A parent’s rights to “the companionship, care, custody, and management” of his
or her children are constitutional interests “far more precious than any
property right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct.
1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While
parental rights are of constitutional magnitude, they are not absolute.  Just
as it is imperative for courts to recognize the constitutional underpinnings of
the parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child’s right to inherit.  Tex.
Fam. Code Ann. § 161.206(b) (West 2008); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings in
favor of the parent.  Holick, 685 S.W.2d at 20–21; In re R.R.,
294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

          In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must prove by clear and convincing
evidence that termination is in the best interest of the child.  Tex. Fam. Code
Ann. § 161.001(2).  Evidence is clear and convincing if it “will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.”  Id. § 101.007 (West
2008).  Due process demands this heightened standard because termination
results in permanent, irrevocable changes for the parent and child.  In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).

          In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.  We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

          In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the jury’s verdict with
our own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006); see also In
re L.M.I., 119 S.W.3d 707, 712 (Tex. 2003) (explaining that in a
termination case, an appellate court should not reweigh disputed evidence or
evidence that depends on witnesses’ credibility), cert. denied, 541 U.S.
1043 (2004).  We determine whether, on the entire record, a factfinder could
reasonably form a firm conviction or belief of the grounds for termination. 
Tex. Fam. Code Ann. § 161.001; C.H., 89 S.W.3d at 28.  If, in light
of the entire record, the disputed evidence that a reasonable factfinder could
not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction in the truth of
its finding, then the evidence is factually insufficient.  H.R.M., 209
S.W.3d at 108.

          There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006); see also
In re D.M., 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.)
(explaining that the termination statute “should not be used to merely
reallocate children to better and more prosperous parents”).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a) (West
2008).  Nonexclusive factors that the trier of fact in a termination case may
use in determining the best interest of the child include the desires of the
child, the emotional and physical needs of the child now and in the future, the
emotional and physical danger to the child now and in the future, the parental
abilities of the individuals seeking custody, the programs available to assist
these individuals to promote the best interest of the child, the plans for the
child by these individuals or by the agency seeking custody, the stability of
the home or proposed placement, the acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one, and any
excuse for the acts or omissions of the parent.  Holley v. Adams, 544
S.W.2d 367, 371–72 (Tex. 1976).

          A
parent’s noncompliance with a service plan may affect a factfinder’s
consideration of the child’s best interest.  In re M.R., 243 S.W.3d 807,
821 (Tex. App.—Fort Worth 2007, no pet.); see also In re K.S., No. 02-09-00331-CV,
2010 WL 2432012, at *8 (Tex. App.—Fort Worth June 17, 2010, no pet.) (mem. op.)
(noting that a mother had been “unwilling to cooperate with CPS and undertake
the services that would return [the child] to her”).  Also, a parent’s
extensive criminal record reflects on the best interest of the child in
maintaining a relationship with that parent.  See In re V.V., 349 S.W.3d
548, 558 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc).  A
child’s limited conscious knowledge of the parent, demonstrating a lack of the
bond that the child has with the parent, may also affect the child’s best
interest in terminating the parent’s rights.  See id.

          Demus
was the sole witness at the termination trial; neither Father nor Mother
testified although they both attended the trial.  Before Demus’s testimony
began, the trial court admitted documents establishing that Father has been
convicted of the following offenses:

·       
forgery
of a $672.84 check (committed in December 2010, convicted in May 2011, fifteen
years’ confinement);[6]

 

·       
forgery
of a $2,000 check (committed in September 2003, convicted in June 2004, one
year’s confinement);

 

·       
injury
to a child (committed in July 2002, convicted in June 2004, five years’
confinement);

 

·       
theft
by check (committed in December 2001, convicted in August 2003, twelve days’
confinement);

 

·       
Class
C assault (committed in May 2001, convicted in August 2001, $100 fine); and

 

·       
possession
of cocaine (committed in March 1994, convicted in April 1998 after a revocation
of community supervision, two years’ confinement).

The
indictment related to appellant’s injury to a child conviction alleged that he
caused injury to a child by “poking her with his finger.”[7] 
Demus projected 2018 as Father’s release date from prison for his May 2011
forgery conviction.

          According
to a statement from Mother to CPS before the trial began, Father knew that she
was using methamphetamine while she was pregnant.  Father did not present
evidence that he made any attempt to abate Mother’s drug use.  Clay required
treatment stemming from issues related to Mother’s drug use during her
pregnancy.

          At
the time of the trial in December 2011, Clay was in a foster home and was,
according to Demus, “doing great.”  Demus conveyed that CPS planned to seek an
adoptive family for Clay if the trial court terminated Father’s rights.  Father’s
attorney had mentioned that Clay could be placed with Father’s sister in
Washington.  Father’s sister called Demus to be considered for placement.  At
the time of the trial, a home study concerning Father’s sister had been started
but was not completed.  Father’s sister did not have a criminal history.  Demus
said that Father’s sister would be given preference as a familial placement if
Father’s parental rights to Clay were terminated.

          In
the event that Father’s sister did not pass the home study, Demus expressed
that Clay’s foster family, where he had been staying for eight to nine months
preceding the trial, was interested in adopting him.  Demus testified that
Clay’s foster parents met his physical and emotional needs and would be able to
continue doing so in the future.

          Considering
Father’s knowledge of Mother’s drug use during her pregnancy; his extensive
criminal history over the course of many years, including his conviction for
causing injury to a child; his inability, because of his most recent conviction
and sentence, to care for Clay for an extended period; his prior sexual
involvement with a child; his lack of desire (or ability, because of his
incarceration) to participate in the Department’s service plan; his failure at
trial to provide any excuses for his bad acts; Clay’s lack of any significant
relationship with Father (because of Clay’s removal from the hospital in
January 2011 and Father’s incarceration two months later);[8]
and the potential for Clay to have a positive, permanent, and stable
environment through adoption by either Father’s sister or Clay’s foster family,
we hold that the trial court could have reasonably formed a firm conviction or
belief that termination of Father’s parental rights to Clay is in Clay’s best
interest.  See J.P.B., 180 S.W.3d at 573; C.H., 89 S.W.3d at 28. 
We overrule Father’s points.

Conclusion

          Having
overruled Father’s points, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DELIVERED:  June 14, 2012









[1]See Tex. R. App. P. 47.4.





[2]We will use “Clay” as an
alias to refer to C.D.S., Jr. throughout this opinion.  See Tex. R. App.
P. 9.8(b)(2).





[3]Meconium is a “dark
greenish mass . . . that accumulates in the bowel during fetal life and is
discharged shortly after birth.”  Webster’s Third New Int’l Dictionary 1401
(2002).





[4]See Tex. Fam. Code
Ann. § 161.001(1)(E), (Q), (2) (West Supp. 2011).  Mother voluntarily
relinquished her parental rights to Clay, and the trial court terminated her
rights on that basis.  She is not a party to this appeal.





[5]Father does not contest,
in either the title or the body of his points, the sufficiency of the evidence
for the trial court’s findings under section 161.001(1)(E) and (Q).  See
Tex. Fam. Code Ann. § 161.001(1)(E), (Q).  While he argues in the body of his
first point that there is no clear and convincing evidence that he knowingly
placed or knowingly allowed Clay to remain in conditions or surroundings that
endangered Clay’s physical or emotional well-being, the trial court did not
terminate Father’s parental rights on that ground.  See Tex. Fam. Code
Ann. § 161.001(1)(D).





[6]Father was in the process
of appealing this conviction at the time of the termination trial.





[7]In his brief, appellant
states that he was convicted of “unlawful sex with a minor.”  We may accept
this fact to be true.  See Tex. R. App. P. 38.1(g); Tri v. J.T.T.,
162 S.W.3d 552, 554 & n.4 (Tex. 2005).  We have held that “evidence of
sexual abuse of one child is sufficient to support a finding of endangerment
with respect to other children.”  In re R.W., 129 S.W.3d 732, 742 (Tex.
App.—Fort Worth 2004, pet. denied).





[8]Demus indicated that
Father had visited Clay one or two times since Clay’s removal as an infant.